## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| DANIEL FINERMAN and DONNA DEVINO, individually and on behalf of all others similarly situated, | CASE NO:   3:14-cv-1154-J-32MCR |
| *Plaintiffs*, | |
| v. | CLASS ACTION |
| MARRIOTT OWNERSHIP RESORTS, INC., a foreign corporation, and INTERNATIONAL CRUISE & EXCURSION GALLERY, INC., a foreign corporation, | JURY TRIAL DEMANDED |
| *Defendants*. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Daniel Finerman and Donna Devino, individually and on behalf of all persons similarly situated (the "Class" or "Class Members"), by and through their undersigned counsel, bring this First Amended Class Action Complaint against Defendants, Marriott Ownership Resorts, Inc. and International Cruise & Excursion Gallery, Inc., and allege as follows:

## NATURE OF THE ACTION

1.      Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this consumer class action lawsuit against Defendants, Marriott Ownership Resorts, Inc. and International Cruise & Excursion Gallery, Inc., for their conduct in inflating and/or deceptively creating certain fees claimed to be owed to governmental entities and port authorities when booking cruises for consumers, and retaining those inflated or fictitious fees for their own profit and gain.

1

2.      Plaintiffs expressly reserve the right to amend and supplement this First Amended Complaint as other information relevant to this action becomes available.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff, Daniel Finerman, is a resident of the state of Florida. The acts described below, and the damages to Plaintiff, for the most part, occurred in this District.

4.      Plaintiff, Donna Devino, is a resident of the state of New Jersey.

5.      Defendant, Marriott Ownership Resorts, Inc. (hereinafter Marriott Vacation Club), is a Delaware corporation with its principal place of business and officers located in Orlando, Florida. Marriott Vacation Club operates substantial business in this state and is subject to personal jurisdiction in this state. It is a wholly owned subsidiary of Marriott Vacations Worldwide Corporation.

6.      Defendant, International Cruise & Excursion Gallery, Inc. (hereinafter International), is a Delaware corporation with its principal place of business in Scottsdale, Arizona, that conducts substantial business in this state and in this District, and is authorized to do business in this state. International's status with the Florida Department of State, Division of Corporations, is listed as active.  It has registered the fictitious name "Our Vacation Center" with the Florida Department of State.  Its office is listed as 15501 N. Dial Blvd., Scottsdale, Arizona.

7.      Beginning in 2009, Marriott Vacation Club has had a contract with International whereby International is the exclusive  provider of travel agent booking services when its members, such as Plaintiffs herein, seek to use their membership points to book cruises on cruise ships.  At all times described herein, International acted as the exclusive agent for Marriott Vacation Club in handling and booking cruises for consumers, such as Plaintiffs, who were

members of Marriott Vacation Club. Marriott Vacation Club is responsible and liable for the acts of International.

8.  Specifically, when members of Marriott Vacation Club seek to use their points to book cruises, members, as was the case for Plaintiffs here, are required by Marriott Vacation Club to use International as the booking agent to book the cruises. More particularly, when a Marriott Vacation Club member seeks to book a cruise using their assigned or accumulated points, they contact Marriott Vacation Club, and Marriott Vacation Club then reroutes the call to International to book the cruise. The International employee then confirms with the Marriott Vacation Club employee how many points that the member has available to book a cruise, and if the member decides on that call to book the cruise, the International agent takes the member's credit or debit card information from the member to pay for the amount of the government fees and port fees, which the International employee represents to the member is the amount that the member owes for the mandatory government fees and port fees as part of the cruise, along with a processing fee. International handles the collection of any sums that it claims the members must pay at the time of booking of the cruise, and the manner in which these sums are paid, used or retained by International.

9.  At all material times, and in each instance where a Marriott Vacation Club member booked a cruise using their points, International was acting as the actual or apparent agent for Marriott  Vacation Club, was acting in the course of the agency relationship created by Marriott Vacation Club, or was vested with the apparent authority in the manner and way  in which Marriott Vacation Club set up and utilized International as the mandatory and only intermediary to enable its members to book a cruise using their membership points. The only way a member of Marriott Vacation Club can book a cruise using their membership points and to

pay for any incidental sums claimed by International to be due for government fees and port fees is through International.

10.     Based upon information and belief, Plaintiffs alleges that at all times alleged herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

11.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because the amount in controversy for the Class exceeds $5,000,000 and putative class members are citizens of a different state than Defendants.

12.      Venue is proper in this District because, as alleged in this First Amended Complaint, Defendants conducted and transacted business in this District, and a substantial portion of the events and conduct giving rise to the violations complained of in this action occurred in this District.

## FACTUAL ALLEGATIONS

13.     Defendant, Marriott Vacation Club is the primary timeshare brand of Marriott Vacations Worldwide Corporation. The brand comprises more than 50 Marriott Vacation Club properties throughout the United States, Caribbean, Europe, and Asia, and more than 400,000 owners.  Marriott Vacation Club resorts consist of one, two, and three-bedroom villas.

14.     Marriott Ownership Resorts, Inc., was started in 1984 on Hilton Head Island, South Carolina, with the acquisition of American Resorts and its 122 villas on Hilton Head Island, which later became the Marriott Monarch at Sea Pines resort.  In 1985, Marriott Rewards

started a partnership with Marriott Ownership Resorts. In 1995, Marriott Ownership Resorts, Inc. was renamed, becoming Marriott Vacation Club International (MVCI) reflecting the company's evolution from real estate development to vacations. In the mid-2000s, Marriott Vacation Club International began to market its core timeshare brand as Marriott Vacation Club.

15.     In November of 2011, Marriott Vacation Club was spun off from Marriott International and became a publicly traded company (NYSE: VAC) under the new parent company Marriott Vacations Worldwide, based in Orlando, Florida. Marriott Vacation Club is one of three brands that include The Ritz-Carlton Destination Club and Grand Residences by Marriott. Marriott Vacation Club markets to the public a timeshare concept which, in exchange for a one time purchase provides the purchaser, now an owner, with an annual allotment of Vacation Club Points: flexible "vacation currency" that can be used each year towards the owner's choice of timeshare vacations.   On its website, Marriott Vacation Club describes its points system as follows:

**Use your Vacation Club Points to experience dream vacations.**

Marriott Vacation Club resort stays are assigned a Vacation Club Points value based on accommodation size, length of stay, location and season. Owners in the Marriott Vacation Club Destinations™ program can choose from any location and any size villa, check in on any day they wish and stay as long as they want — or use Vacation Club Points to experience other types of vacations such as cruises, tours, exchanges, hotel stays and travel services.

**You get a new allotment every year.**

One of the greatest aspects of points-based vacation ownership in the Marriott Vacation Club Destinations™ program is that your Vacation Club Points are replenished each year. That means, every year you will get to choose from an ever-growing collection of exciting timeshare vacations — currently more than 5,000 unique options and experiences. Return to a favorite destination every year or explore the world and never experience the same vacation twice. It's all up to you, and each year you get to choose.

**You can bank or borrow for even greater flexibility.**

Got an idea for a truly epic vacation? Plan on bringing a big group this year? No problem. As a timeshare Owner in the Marriott Vacation Club Destinations program, if your vacation plans call for more Vacation Club Points than your annual allotment, you can enjoy the flexibility to borrow from the following year's balance to be used toward this year's vacation. Or, will your schedule only allow for a short vacation this year? You won't lose any Vacation Club Points; you can bank the remainder for use next year, if you like.

**You can add Vacation Club Points at any time.**

As your life changes, your vacation ownership can evolve right along with you. Plus, as your vacation portfolio grows, you can achieve Premier or Premier Plus status with Marriott Vacation Club — and enjoy enhanced benefits such as access to VIP weekends, select The Ritz-Carlton Club locations, luxury cruises, Marriott Rewards® upgrades and more.

16.     Marriott Vacation Club claims that it is the leader in Timeshare Ownership offering the ultimate in vacation flexibility with a deeded, points-based ownership program.

17.     Marriott Vacation Club claims that annual Vacation Club Points can be used to enjoy weeks of vacation in luxurious destinations, for weekend getaways and other vacation experiences. The types of vacations available for owners are as follows:

- •Marriott Vacation Club Collection - More than 50 Marriott Vacation Club resorts

- •Marriott Collection - More than 3,000 Marriott hotels and resorts

- •Explorer Collection - Specialty travel options including safaris, wine tours and cruises

- •World Traveler Collection - More than 2,500 affiliate resorts in 75 countries

18.     The purchase price for ownership is not cheap. On its website, Marriott Vacation Club provides a few examples of the costs of Vacation Club Points.  Here are a few examples of popular Vacation Club Points levels:

| Vacation Club Points | Financing Available* | | Annual Maintenance Fees |
| --- | --- | --- | --- |
| | 10% Down Payment | Approximate Monthly Payment | |
| 1,500 Points | $1,938 | $279 | $755 |
| 2,500 Points | $3,230 | $443 | $1,258 |
| 3,500 Points | $4,522 | $594 | $1,761 |

19.     Defendants engage in a common course of conduct and practice of creating, inflating and collecting deceptively exaggerated government fees and port fees in booking cruises for members of Marriott Vacation Club. While members use points in booking cruises, Defendants charge members of the Marriott Vacation Club cash for certain other fees such as government fees and port fees which they deceptively create or inflate and then retain these sums.

## INDIVIDUAL PLAINTIFFS' ALLEGATIONS

**A.     Daniel Finerman**

20.     Plaintiff, Daniel Finerman, became a member of Marriott Vacation Club in 2005 when he purchased a one-week timeshare in Aruba. As a member of Marriott Vacation Club, Plaintiff also became a member of the Vacation Club Destination Exchange Program, which allows its members to obtain points in exchange for not using their time share allotment at the timeshare. Mr. Finerman's week at his timeshare is worth 3,075 points, which he can use for other vacation destinations, adventure travel, cruises, guided tours and special hotel experience packages.

21.     With his points, Mr. Finerman booked and paid through Marriott Vacation Club for a six-day Western Caribbean cruise departing from Ft. Lauderdale on November 9, 2014. The cruise was on a vessel operated as part of the Carnival Cruise Line.  The cost of the cruise for him and his spouse was 2,650 points.

22.     In order to book the cruise using his Marriott Vacation Club points, Mr. Finerman was connected to a representative of International who handled the booking process.

23.     In addition to his points, Mr. Finerman was billed by Marriott Vacation Club the sum of $566.17, which consisted of the following: $159.00 per person for Port fees, $114.11 per person for Government Fees, and a processing fee of $19.95, for which he paid.

24.     On   June   5,   2014,   Kalynn   Kruger,   using   the   email   address "ourvacationcenter.com" sent an email to Mr. Finerman confirming that he and his wife were booked on the cruise on Carnival Cruise Line.  The email, which is set forth below, used the Marriott Vacation Club trademark or trade name in the email.



From: kalynn.krueger@ourvacationcenter.com
To: dfschmagel@aol.com
Sent: 6/5/2014 9:17:17 P.M. Eastern Daylight Time
Subj: Cruise Receipt and Itinerary for Cruise ID #: CRBK1824183

### Marriott VACATION CLUB

**Our Vacation Center**   1-866-503-285
15501 N Dial Blvd
Scottsdale, Arizona
85260

**Passengers**
Mr. Daniel Finerman
Mrs. Rosanne Finerman

**Booking Detail**

| | |
|---|---|
| Cruise line: | Carnival Cruise Lines - Carnival Freedom |
| Destination: | Caribbean, Western |
| Sailing date: | 11/9/2014 - 11/15/2014   **Days** 6 |
| Cabin: | 8N - 8459   **Dining pref:** Open Seating |

| | |
|---|---|
| Ref Number: | CRBK1824183 |
| Booking Number: | 1V6HD1 |
| Booking Date: | 6/4/20 14 |
| Vacation Consultant: | Kalynn Krueger |
| Air Included: | No |
| GDS ID: | 1V6HD1 (Sabre) |

Mr. Daniel Finerman
55 Westminster DR
Palm Coast FL 32614

| Quantity | Description | Rate | Total |
|---|---|---|---|
| 2 | Govt Fees - Passenger 1, 2 | $114.11 | $228.22 |

1

9



25.     Concerned about these costs, Mr. Finerman called Marriott Vacation Club and was told by a company representative that these fees were not covered by points.

26.     Mr. Finerman booked the cruise using his points and paid the sum of $566.17, which he was required to pay to book the cruise.  After booking the cruise using his Marriott Vacation Club points and paying the port fees of $159.00 per person and government fees of $114.11 per person, Mr. Finerman went on a website maintained by Carnival.  For the same

cruise that he had already booked, he discovered that the port fees and government fees totaled $235.08 for two persons.

27.     The amounts charged and paid by Mr. Finerman for government fees and port fees were fabricated, or at the very least inflated, to increase profits, and these deceptively billed and collected sums were never intended to and were not in fact paid to any governmental entity or port authority in their entirety, rather, at least some portion of these sums were retained by Defendants, or at least, by International, the agent for Marriott Vacation Club.

**B.     Donna Devino**

28.     Donna Devino is also a member of Marriott Vacation Club, and also received points as a benefit of her membership.

29.     Since becoming a member, she has booked several cruises using her Marriott Vacation Club points.  Each time, Mrs. Devino would call Marriott Vacation Club which would then connect her to an International representative that handled the actual booking.

30.     Specifically, Mrs. Devino took cruises through Marriott Vacation Club (and thus International) in June 2012, December 2013, and December 2014, amongst others.

31.     For example, with her points, Mrs. Devino booked and paid through Marriott Vacation Club for a four-day cruise departing from Ft. Lauderdale on December 4, 2014. The cruise was on a vessel operated as part of the Princess Cruise Line.

32.     For the Princess cruise, Mrs. Devino was charged $180.00 per person ($360.00 total) for government fees and port fees by Defendants.

33.     However, when Mrs. Devino printed out the boarding passes from Princess Cruise Line's website, the passes stated that government fees and port fees amounted to $160.00 total,

for two passengers.  She then called Princess Cruise Lines and confirmed that port fees and government fees for the cruise were $80.00 per person or $160.00 for two.

34.     Mrs. Devino then contacted Marriott Vacation Club directly about the issue, but it refused to reimburse Mrs. Devino for the difference in price.

35.     After discovering this overcharging related to the December 2014 Princess cruise, Mrs. Devino endeavored to discern whether similar overcharging had occurred on prior cruises.

36.     For example, Mrs. Devino booked and paid through Marriott Vacation Club for a seven-day cruise departing from Miami on December 7, 2013. The cruise was on a vessel operated as part of the Celebrity Cruise Line.  For the Celebrity cruise, Mrs. Devino was charged $272.13 per person ($544.26 total) for government fees and port fees by Defendants.

37.     However, when Mrs. Devino visited the Celebrity Cruise Line website and booked the same cruise with a sail date of December 12, 2015, government fees and port fees amounted to $100.91 per person ($201.82 total).

38.     Similarly, Mrs. Devino booked and paid through Marriott Vacation Club for a seven-day cruise departing from Seattle on June 3, 2012. The cruise was on a vessel operated as part of the Norwegian Cruise Line.  For the Norwegian cruise, Mrs. Devino was charged $418.40 per person ($836.80 total) for government fees and port fees by Defendants.

39.     When booking the same cruise on the Norweigan Cruise website with a sale date of June 7, 2015, government fees and port fees amounted to $208.73 per person ($417.46 total).

40.     Government fees and port fees paid by Mrs. Devino for the Celebrity cruise and the Norwegian cruise, like those for the Princess cruise, were fabricated, or at the very least, inflated to increase profits, and these deceptively billed and collected sums were never intended to and were not in fact paid to any governmental entity or port authority in their entirety, rather,

at least some portion of these sums were retained by Defendants, or at least by International, the agent for Marriott Vacation Club.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated as permitted by Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4). Plaintiffs are informed and believe that there are at least thousands in the proposed Class. The proposed **Nationwide Class** consists of:

> **All persons throughout the United States who from 2010 to date were members of the Marriott Vacation Club and who booked a cruise through Defendants.**

42.     The proposed **New Jersey Subclass** consists of:

> **All persons throughout New Jersey who from 2010 to date were members of the Marriott Vacation Club and who booked a cruise through Defendants.**

Collectively, the Nationwide Class and New Jersey Subclass are referred to as the **Classes**.

43.     Defendants are excluded from the Classes as well as any entity in which Defendants have a controlling interest, along with Defendants' legal representatives, officers, directors, assignees and successors.  Also excluded from the Classes is any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons, and the members of the judge's staff

44.     The Classes are so numerous that joinder of all Members is impracticable. Information in the records of Defendants will establish the names and addresses of Class Members and the size of the Classes.

45.     The common questions of law and fact among all Class Members predominate over any issues affecting individual Class Members and include the following:

13

a.  Whether Defendants billed and collected government fees and port fees in an amount not due or owing to any government or port authority;

b.  Whether Defendants' conduct in billing and collecting government fees and port fees in an amount not due or owing to any government or port authority is unfair, deceptive, and/or unconscionable;

c.  Whether by collecting and retaining government fees and port fees in an amount not due or owing to any government or port authority Defendants have unjustly retained a benefit at the expense of Plaintiffs and the Class;

d.  Whether Plaintiffs and Class Members are entitled to injunctive relief; and

e.  Whether Plaintiffs and Class Members have sustained monetary loss and the proper measure of that loss.

46.  Plaintiffs will fairly and adequately protect the interests of the Classes.

47.  Plaintiffs' claims are typical of those of other Class Members, as there are no material differences in the facts and law underlying their claims and Plaintiffs' prosecution of their claims will advance the claims of all Class Members.

48.  Plaintiffs have retained competent counsel experienced in the prosecution of this type of Class litigation.

49.  Class treatment of the claims set forth in this Amended Complaint is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation, particularly in light of the damages involved when compared with just the filing fees alone, would make it impracticable or impossible for the proposed Class Members to prosecute their claims individually. Absent a Class action, a multiplicity of

individual lawsuits would be required to address the claims between the Class Members and Defendants so that inconsistent treatment and adjudication of the claims would likely result.

50.     The litigation and trial of Plaintiffs' claims are manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, the presence of a reasonable mathematical based methodology for generalized proof of damages and the impact of Defendants' conduct on the Class, and the readily ascertainable identities of many Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a Class action.

51.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

52.     Defendants have acted or refused to act on grounds that apply generally to the Class, making final injunctive relief appropriate to the Class as a whole.

53.     Defendants' acts and omissions are the direct and proximate and/or direct cause of damage described more fully in the paragraphs set forth in this Amended Complaint.

## COUNT I – VIOLATION OF FDUTPA

54.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 53 as if full set forth herein

55.     Plaintiffs assert this cause of action on behalf of themselves and the Nationwide Class.

56.     Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201, *et seq*., declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 501.201.

57.     Plaintiffs and Nationwide Class members are "consumers" as defined by Florida Statute § 501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute § 501.203(8).

58.     Defendants violated and continue to violate FDUPTA by engaging in the described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute § 501.201, *et seq*.  Defendants' practices were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

59.      Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce by, inter alia, their deceptive creation, inflation and collection of government fees and port charges that were not owed to either governmental entities or port authorities and by Defendants' retention of those sums.

60.     Defendants' conduct is clearly unfair, deceptive, and unconscionable as the practice of falsely creating or inflating a government fee or port charge above and beyond that which is owed to a government or port authority has long been regarded as a deceptive practice.

## COUNT II – UNJUST ENRICHMENT

61.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 to 53 as if fully set forth herein.

62.     Plaintiffs assert this cause of action on behalf of themselves and the Nationwide Class.

63.    Plaintiffs and the Nationwide Class have conferred a benefit upon Defendants by paying them sums for government fees and port fees which were not owed to either governmental entities or port authorities but were retained by Defendants.

64.    By their unlawful conduct, Defendants have unjustly received and retained a benefit at the expense of Plaintiffs and Class Members.

65.    Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and the Class that they unjustly received as a result of their conduct alleged herein without providing compensation to Plaintiffs and Class Members.

66.    Plaintiffs and the Class have suffered financial loss as a direct result of Defendants' conduct.

67.    Plaintiffs and Nationwide Class Members are entitled to restitution of, disgorgement of, or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their conduct alleged herein.

## COUNT III – VIOLATION OF NJCFA

68.    Plaintiff Devino re-alleges and incorporates by reference Paragraphs 1 to 53 as if fully set forth herein.

69.    Mrs. Devino asserts this cause of action on behalf of herself and the New Jersey Subclass.

70.    The New Jersey Consumer Fraud Act, N.J. STAT. ANN. §§ 56:8-1, *et seq.* ("NJCFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

71.     Mrs. Devino, the New Jersey Subclass Members, and Defendants are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

72.     Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. §56:8-1(c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

73.     The NJCFA prohibits, in relevant part, "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise. . . ." N.J. Stat. § 56:8-2.

74.     As described above, Defendants deceptively created, or inflated, and collected government fees and port charges that were not owed to either governmental entities or port authorities and retained those sums.

75.     Mrs. Devino and the New Jersey Subclass Members reasonably expected that the charged government fees and port charges were not deceptively created or inflated.

76.     Defendants knew, or, in the exercise of diligence, should have known, the government fees and port charges they charged for and collected were deceptively created or inflated.

77.     In failing to disclose the deceptively created or inflated government fees and port charges, Defendants omitted material facts they were under a duty to disclose to Mrs. Devino and the New Jersey Subclass Members.

78.     The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

79.    Had Mrs. Devino and the New Jersey Subclass Members known about the deceptively created or inflated government fees and port charges, they would not have paid them.

80.    As a direct and proximate result of Defendants' actions, Mrs. Devino and the New Jersey Subclass Members have suffered ascertainable loss and other damages.

81.    Defendants had an ongoing duty to all Marriott Vacation Club Members to refrain from unfair and deceptive practices under the NJCFA in the course of their business.

82.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

83.    As a result of the foregoing wrongful conduct of Defendants, Mrs. Devino and the New Jersey Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

## RELIEF SOUGHT

**FOR ALL THESE REASONS**, Plaintiffs individually and on behalf of all others similarly situated, seek relief as more fully set forth in this Complaint as follows:

a.   For an order certifying that the action may be maintained as a Class action, under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs, Daniel Finerman and Donna Devino, as Class Representatives, and appointing their counsel as Counsel for the Class;

b.   For an award of equitable relief as follows:

     i.  Enjoining Defendants from engaging in similar unfair, unlawful, and deceptive misconduct in the future;

     ii.  Requiring Defendants to disgorge all ill-gotten gains flowing from the wrongful conduct described in this Complaint;

c.  For an award of attorney's fees and costs;

d.  For an award of damages; and

e.  For any further legal and equitable relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on issues so triable.

Respectfully submitted,

/s/ John A. Yanchunis
**JOHN A. YANCHUNIS**
FBN: 0324681
jyanchunis@forthepeople.com
**MARCIO W. VALLADARES**
FBN:  0986917
mvalladares@forthepeople.com
**PATRICK A. BARTHLE II**
FBN:  0099286
pbarthle@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida  33602
(813) 223-5505 Telephone
(813) 223-5402 Facsimile

**STEVEN TEPPLER**
FBN: 14787
**ABBOTT LAW GROUP, P.A.**
2929 Plummer Cove Road
Jacksonville, FL  32223
Telephone: 904.292.1111

Facsimile: 904.292.1220
steppler@abbottlawpa.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 14, 2016, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record in this matter.

/s/ John A. Yanchunis