**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DANIEL FINERMAN and DONNA
DEVINO, individually and on behalf of
all others similarly situated,

                        Plaintiffs,              Case No.:  3:14-cv-1154-J-32MCR

      vs.

MARRIOTT OWNERSHIP RESORTS, INC.,
a foreign corporation, and INTERNATIONAL
CRUISE & EXCURSION GALLERY, INC., a
foreign corporation,

                        Defendants.

_____/

**PLAINTIFFS'  MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND**
**EXPENSES, AND FOR APPROVAL OF SERVICE AWARDS TO CLASS**
**<u>REPRESENTATIVES AND SUPPORTING MEMORANDUM OF LAW</u>**

After more than three and a half years of prosecuting this complex action and having successfully negotiated a Settlement affording benefits to the class worth *at least* $23.9 million, Plaintiffs request that the Court award Plaintiffs' Counsel, appointed previously by the Court as Class Counsel, $4 million in fees and $300,000 in costs and expenses.[1]  Plaintiffs also request that the Court grant Settlement Class Representatives Daniel Finerman and Donna Devino ("Plaintiffs" or "Class Representatives") Service Awards of $10,000 each.

The requested relief is demonstrably reasonable and appropriate and amply supported by the record,[2] including the supporting declaration of Tod Aronovitz a former President of The Florida Bar and a widely respected attorney eminently qualified to opine on the subject of attorneys' fees, costs and expenses in this matter.  Mr. Aronovitz's declaration is attached hereto as **Exhibit A** (hereinafter, "Aronovitz Decl.").  Save the provision in which Defendants reserve the right to oppose an attorneys' fee request to the extent that it exceeds $3 million, the Settlement expressly reflects the parties' arms-length and separately negotiated agreement to the relief sought herein.  This factor alone merits great weight and consideration by the Court in ruling on Plaintiffs' motion.  Further, Plaintiffs seek a fee award that is eminently reasonable under the controlling "percentage of the benefit" fee-assessment method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991).  The requested fee is 16.7% of the total monetary value of the settlement, which is, at minimum, $23.9 million and comprises (a) at least $7.9 million in immediate pay-out benefits, (b) $13

---

[1]  Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release ("Settlement"), which was previously filed at Doc. 205-1.

[2]  Plaintiffs specifically incorporate by reference in this motion Plaintiffs' January 17, 2017 Motion for Preliminary Approval of the Settlement and for Certification of the Settlement Class (including attachments and declarations)  ("Preliminary Approval Motion"), (Doc. 205), the Court's February 23, 2017 Preliminary Approval Order, (Doc. 208), and Plaintiffs' April 23, 2017 Motion for Final Approval of the Settlement and Certification of the Settlement Class (including attachments and declarations)  ("Final Approval Motion"), (Doc. 209).

1

million in future benefits resulting from Defendants' agreement under the Settlement to cease the business practices at issue in this case, and (c) at least $3 million (and up to $ 4 million) in attorneys' fees negotiated with and payable separately by Defendants in the Settlement.  The 16.7 percent fee request is well below the presumptively reasonable and prevailing benchmark of 25 percent in this Circuit.[3]  Plaintiffs also seek a cost and expense reimbursement of $300,000, comprising out-of-pocket costs and expenses reasonably advanced by Class Counsel in prosecuting this action to final and successful resolution.  Finally, Service Awards of $10,000 are requested for each of the Class Representatives, a fairly standard amount in the circumstance that reasonably compensates them for their effort, time, and dedication in this action on behalf of the Settlement Class.

## I.    INTRODUCTION

Plaintiffs and the Settlement Class are members of Defendant Marriott Ownership Resorts, Inc.'s ("MORI") Marriott Vacation Club Destinations Exchange Program ("Exchange Program").  Beginning in mid-2010, Vacation Club Members could use their Exchange Program Points to book cruises.  This cruise-for-points program is referred to as the Ocean Explorer Program.  Defendant International Cruise & Excursion Gallery, Inc. ("ICE") was the exclusive travel agent for booking cruises in the Ocean Explorer Program.

Plaintiffs allege that Defendants charged Exchange Program Members cash for "port fees," "port charges," or "cruise line pass through fees," that were, in fact, part of the cruise

---

[3] Under *Camden 1*, the benefit of the fund analysis controls; the loadstar/multiplier analysis is improper, although some courts use the latter valuation to cross-check the former.  *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1302 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a loadstar calculation is not proper in common fund cases, we may refer to that figure for comparison.").  As discussed infra, the fee request is well supported by the loadstar/multiplier method, which may be referenced as a cross-check to the percentage of the benefit calculation.

fare—referred to in the cruise and travel industry as the non-commissionable cruise fare ("NCFs")—and thus should have been covered by Members' Exchange Points.   Defendants, to this day, disagree that the cash charges were improper and believe that Plaintiffs would not have overcome significant legal and factual hurdles had the case proceeded to trial. Class certification was also less than certain and would have surely been opposed before this Court as well as before the Eleventh Circuit Court of Appeals.  As detailed in the docket, Declarations, deposition transcripts and more, Defendants' positions have been relentlessly asserted by teams of experienced, thorough, and well-funded lawyers associated with two of the largest and most prominent firms in the country.

## II.    BACKGROUND OF THE CASE

### A.    Procedural History

This action commenced in state court on July 9, 2014, seeking a nationwide class for violations of the FDUTPA and Unjust Enrichment.  (Doc. 2 ¶¶ 21, 32–44). Following removal, (Doc. 1), on October 20, 2014, ICE filed its first Motion to Dismiss, (Doc. 28).  In light of certain jurisdictional questions presented by the removal, Plaintiff deposed ICE's corporate representative, and in reliance on that testimony, Plaintiff voluntarily dismissed ICE from the suit.  (Docs. 31 & 32).  On September 15, 2015, this Court denied Marriott's motion to dismiss. (Doc. 38).  On November 3, 2015, the Court held a telephonic conference, (Doc. 48), and directed Plaintiff to take discovery to determine whether to pursue claims against ICE.  (Doc. 49).  Following another deposition of ICE's corporate representative, Plaintiff took steps necessary for ICE's reinstatement as a defendant.  (Docs. 54, 57, 58).

On March 15, 2016, Plaintiffs filed an Amended Complaint, including ICE as a Defendant.  (Doc. 59).  The Amended Complaint also added Plaintiff Donna Devino, added a

New Jersey subclass, sought relief under the New Jersey Consumer Fraud Act ("NJCFA"), and preserved the nationwide class for purposes of the FDUPTA and Unjust Enrichment claims, (*id.* ¶¶ 28–42, 54–67, 68–83). In April 2016, Defendants answered. (Docs. 63 & 66).

On June 30, 2016, Plaintiffs sought leave to file a Second Amended Complaint ("SAC"), (Doc. 72), based on information obtained during a deposition of Carnival Cruise Lines' corporate representative. On July 13, 2016, ICE and MORI together filed a Motion for Partial Summary Judgment and to Dismiss. (Doc. 73). On January 11, 2017, the Court denied Defendants' motion and granted Plaintiffs' Motion for Leave to Amend. (Doc. 116).

On March 10, 2017, Plaintiffs moved for summary judgment on their contract claims. (Doc. 145). On May 17, 2017, ICE moved to dismiss or preemptively decertify Plaintiffs' claims, premised primarily on a lack of personal jurisdiction over ICE for claims relating to non-Florida plaintiffs. (Doc. 159). On June 12, 2017, Plaintiffs moved for leave to file a Third Amended Complaint, to assert a claim for breach of a third-party beneficiary contract. (Doc. 173). Those motions—for summary judgment, to decertify, and to amend—were pending at the time resolution was reached, following a third mediation session in September 2017.

On January 17, 2018, Plaintiffs moved for preliminary approval of the Settlement and for certification of the Settlement Class ("Preliminary Approval Motion"). (Doc. 205). After a hearing on February 20, (Doc. 207), Preliminary Approval was granted. (Doc. 208). On April 23, Plaintiffs moved for final approval of the Settlement and for final certification of the Settlement Class ("Final Approval Motion"). (Doc. 209).

### B.    Discovery

Likewise, and as described in the declarations of John Yanchunis, Joel Rhine and Steve Teppler, significant, sophisticated and targeted discovery was intensely conducted because

counsel anticipated that the case would be tried. In rolling productions interwoven with discovery disputes, Defendants produced approximately 24,119 pages of documents, which Plaintiffs reviewed, organized, and coded so that they could be used efficiently and effectively.  Plaintiffs propounded dozens of interrogatories and requests for admission (including two requests related to authenticity and admissibility of approximately 414 exhibits that Plaintiffs' counsel anticipated using at trial).

 Deposition discovery was similarly extensive.   In October 2014 and December 2015, ICE's corporate representative was deposed in Phoenix, Arizona.   The MORI corporate representative deposition was taken in January 2016 in Orlando, Florida.   The corporate representative deposition of Carnival Cruise Lines was taken in March 2016, in Miami, Florida. In February 2017, Plaintiffs sought leave to take in excess of ten depositions, (Doc. 119), which the Court granted in part, (Doc. 144).  Using hundreds of exhibits, from April through August 2017, Plaintiffs took the depositions of eleven individual fact witnesses—in Utah, Arizona, Nevada, and Florida—as well as the deposition of the corporate representative for Norwegian Cruise Lines.  Likewise, class representative Daniel Finerman was deposed twice—in May 2016 and May 2017, in Orlando Florida—and Plaintiff Donna Devino was deposed in May 2017 in New Jersey.  At the time of the settlement, fact discovery was closed, having come to an end on June 15, 2017.  (Doc. 144 at 2).

Expert discovery was similarly robust.  Plaintiffs retained four nationally recognized testifying experts—Paul Ruden, Jack Anderson, Dr. Elizabeth Yost, as well as rebuttal expert Dr. Elizabeth Stringam—who in addition to their own extensive libraries of documents, were given access to the documents produced in this case. (Doc. 205-5 at ¶ 10).  Each expert witness produced a report and prepared for depositions.  Defendants took depositions of two experts

(Ruden and Anderson).   The remaining experts, including Defendants' expert—Dr. Itamar Simonson—were scheduled for depositions at the time of resolution.

As the Court is aware, discovery in the matter was contentious.   Plaintiffs filed three motions to compel, (Docs. 112, 113, 158), and a motion to compel testimony and find a waiver of attorney-client privilege, (Doc. 175), which was pending at the time resolution was reached.

### C.      Mediation

The parties mediated this matter on August 9, 2016, and August 16, 2016, with Rodney Max, a very accomplished and highly experienced mediator, (Doc. 82), and again on September 1, 2017, with Judge Herbert Stettin.

Even after a resolution was agreed to in principle at the last mediation, the deal nearly collapsed on numerous occasions as the parties slowly worked to bridge all their differences on complex matters. At all times the parties' negotiations were adversarial, non-collusive, and conducted at arm's length.

### D.      The Settlement

As the Court is aware, the Settlement provides both monetary and injunctive relief to a nationwide class composed of all persons who were members of the Exchange Program and booked a cruise through Defendants. Settlement § II, ¶ 25. First, Defendants will make available to Settlement Class Members three remuneration options: (a) 50% of the cash value of the NCFs a Settlement Class Member paid, returned in cash ("Cash Option"); (b) 75% of the cash value of the NCFs a Settlement Class Member paid, returned in a converted value of cruise-only Exchange Program PlusPoints, calculated at a rate of 75% of NCF/$0.53 and rounded to the nearest ten (10) Exchange Point increment ("Points Option"); or (c) 75% of the cash value of the

NCFs a Settlement Class Member paid, returned in an ICE-branded gift card that can be redeemed on a website created by ICE ("Gift Card Option").  *See* Settlement § III.

Settlement Class Members are entitled to seek remuneration, in one of the forms identified above, for all cruise bookings made between 2010 and February 23, 2018, the date of Preliminary Approval.  Settlement Class Members may choose any Option for up to five (5) cruise bookings.  For all bookings in excess of five, Class Members will receive the Gift Card Option.  Also, if chosen, the Points Option must be exercised within three years from the Claim Deadline.

In addition to the monetary aspects, a significant feature of the Settlement includes important prospective business practice changes, halting the conduct which served as the foundation for Plaintiffs' claims.  Pursuant to the Settlement, Defendants have agreed that (1) Program Members will be able to use Exchange Points as complete payment for all amounts required to purchase a cruise through the Exchange Program, including NCFs, but excluding government-imposed taxes and government-imposed fees, and (2) Defendants will include the amount of any NCF within the amount disclosed as "cruise fare" on booking confirmations provided to Program Members.  *See* Settlement § III, ¶ 32.

## III.    ARGUMENT

### A. The Court Should Afford Substantial Weight to the Settlement on Fees and Costs.

Save the provision in which Defendants reserve the right to oppose an attorneys' fee request to the extent it exceeds $3 million, the Settlement expressly reflects the parties' arms-length and separately negotiated agreement to the relief sought herein.  The Settlement  provides that Class Counsel will apply to the Court for an award of up to $4,000,000 in attorneys' fees and $300,000 in costs and expenses.  *See* Settlement § IX at ¶ 53.  Defendants will not oppose a

request that that seeks up to $3,000,000 in fees and $300,000 in costs, reserving the right to oppose the fee portion of the request if it exceeds $3,000,000. *Id.* The Settlement (including of course its benefits to the Settlement Class) expressly remains in full force and effect regardless of whether, or to what extent, the Court grants Plaintiffs' application for fees and costs. *Id.*

The Court must independently evaluate the requested fees, costs and expenses and is certainly not bound by the parties' agreement in the Settlement regarding fees, costs and expenses. The Settlement is entitled to great weight, however, because it resulted from adversarial negotiations after resolution of the merits was reached by the parties. *See, e.g.*, *Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816, at *2 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001). As has been noted:

> The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive. Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request.
>
> Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (noting that negotiated, agreed upon attorneys' fees are the "ideal" toward which the parties should strive and stating that "[i]deally, of course, litigants will settle the amount of a fee").

*Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) (internal citations omitted); *see also, e.g., Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize

their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."). Citing *Manners* with approval, this Court has held:

> The Court finds that the parties' agreement with regard to the payment of fees and expenses was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud. As a result, the parties' agreement is entitled to substantial weight. *See, e.g.*, *Strube v. Am. Equity Inv. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 28582 at *6–7 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca–Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Manners v. Am. Gen. Life Ins. Co.*, No. 3–98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. August 11, 1999).

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (Corrigan, J.) (*Hinson I*); *accord Bastian v. United Servs Automobile Ass'n, et al*, No. 3:13-cv-1454-TCJ-MCR at p. 32 (M.D. Fla. Nov. 11, 2017) (Corrigan, J.) ("[T]he amount of attorneys' fees and costs was separately negotiated from the settlement of the Class Claims, and the award of attorneys' fees and costs does not diminish the amount to be paid to Class Members under the Settlement Agreement.").

Practical and prudential considerations warrant judicial deference toward the Settlement in this case. The law mandates no singular reasonable fee or cost amount. The notion of reasonableness inheres a range of amounts about which there can be legitimate differences of opinion. As long as the requested fee is one that the Court agrees falls within the range of reasonableness, it should be approved. Further, the competing pressures on the parties acted as bona fide, competing incentives that normally drive private fee negotiations, ensuring that the agreed upon fee does not yield a windfall. *See generally In re Continental Illinois Sec. Lit.,* 962 F.2d 566, 572-73 (7th Cir. 1992); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974). The weight afforded to an agreement by the parties regarding fees in this circumstance is especially significant in cases, like this one, in which the fees are paid by the

defendants, rather than the class members. *See, e.g., In re LG/Zenith Rear Projection Television Class Action Litig.*, 2009 WL 455513, at *8-9 (D.N.J. Feb. 18, 2009); *In re Ins. Brokerage Litig.*, 2007 WL 16452303, at *4 (D.N.J. June 5, 2007), *aff'd*, 579 F.3d 241 (3rd Cir. 2009). In this case, the requested fees, costs and expenses take nothing away from the Settlement Class, who can avail themselves of the Settlement's benefits irrespective of and unhinged from whether or what amount the Court grants in fees, costs and expenses to Class Counsel. *See* Settlement § IX at ¶ 53.

### B.  The Requested Fee is Clearly Reasonable under the Common Fund Doctrine.

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In a class case as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I,* 946 F.2d at 774-75. Courts have a great deal of discretion in choosing the proper percentage. "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id.* at 774. The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) and any other "unique" circumstances. *Camden I* at 775. In *Camden I,* the Eleventh Circuit recognized that a fee award of 50 percent of the benefit is the upper limit; that the majority of fee awards fall between 20 and 30 percent. *Camden I*, 946 F.2d at 774-75. As stated in *Camden I* and followed by this Court, unless specific circumstance suggest otherwise, 25 percent serves as the default "benchmark". *Id.* at 774-75; *accord In re Rayonier Inc.*

*Securities Litig.*, 3:14-cv-1397-J-32JBT, 2017 WL 454852, at *1 (M.D. Fla. October 10, 2017) (Corrigan, J.); *Hinson I*, 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (Corrigan, J.).

Here, Class Counsel seek a fee award of $4 million. Conservatively, this award amounts to approximately 16.7 percent of the common fund with a value of at least $23.9 million, well below the 25 percent "benchmark" for reasonableness of fee awards in this Circuit.

For purposes of determining fees under the controlling percentage of the benefit fee-assessment method, the total value of the common fund or class benefit, both monetary and nonmonetary relief, is considered. *Camden I*, 946 F.2d at 771. Said differently, non-monetary relief provided to the class is "part of the settlement pie." *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (per curiam), *cert. denied sub nom.*, *Frank v. Poertner*, 136 S. Ct. 1453 (2016). Thus, "[w]hen the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *In re: Checking Account Overdraft Litig.*, 1:09-MD-02036-JLK, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013); *Marty v. Anheuser-Busch Companies, LLC*, 13-CV-23656-JJO, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015) ("Under Eleventh Circuit law, injunctive changes . . . represent a benefit to the class and should be considered when approving a class settlement.") (citing *Poertner*, 618 Fed. Appx. at 629 ). And when analyzing the value of non-monetary benefits, courts should consider changes to a defendant's business practices. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011) (portion of fee properly allocated to compensation for "non-monetary benefits [counsel] achieved for the class—like company-wide policy changes").

Attorney fees to be paid separately by defendants are also included in valuing the class benefit. *See, e.g.*, *Camden I*, 946 F.2d at 771 (recognizing that fees are proper under the

common fund approach where the class receives "monetary or nonmonetary benefits"); *Poertner v. Gillette Co.,* 618 Fed. Appx. at 628; *Hinson I*, 13-cv-00029-TJC-JRK, 2016 WL 10459419, at *3 (Corrigan, J.) (approving class plaintiffs' fee petition based on class benefit valued by inclusion of $15 million in attorney fees and costs to be paid separately by defendants); *Bastian*, No. 3:13-cv-1454-TCJ-MCR at p. 32 (Corrigan, J.); *Johnston v. Comerica Mtg. Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996); *In re Managed Care Lit.*, 2003 WL 22850070 at *6 (S.D. Fla. Oct. 24, 2003); *David v. American Suzuki Motor Corp.*, 2010 WL 1628362 at *8 n.14 (S.D. Fla. Apr. 15, 2010).  This makes sense because if the fees were not paid separately, class members would have to pay them directly out of the fund. *Manual for Complex Litigation* § 21.7 at 335 (4th ed.) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney's fees and expenses … the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class.").

In this case, the Settlement provides both monetary and injunctive relief.  First, Defendants will make available to Settlement Class Members three remuneration options: (a) 50% of the cash value of the NCFs a Settlement Class Member paid, returned in cash ("Cash Option"); (b) 75% of the cash value of the NCFs a Settlement Class Member paid, returned in a converted value of cruise-only Exchange Program PlusPoints, calculated at a rate of 75% of NCF/$0.53 and rounded to the nearest ten (10) Exchange Point increment ("Points Option"); or (c) 75% of the cash value of the NCFs a Settlement Class Member paid, returned in an ICE-branded gift card that can be redeemed on a website created by ICE ("Gift Card Option").  *See* Settlement § III.  Settlement Class Members are entitled to seek remuneration, in one of the forms identified above, for all cruise bookings made during the Class Period, between 2010 and February 23, 2018, the date of Preliminary Approval.  *Id.*

Further, as part of the Settlement, Defendants agreed that (1) Program Members will be able to use Exchange Points as complete payment for all cruise fare amounts, including NCFs, and (2) Defendants will include the amount of any NCF within the amount disclosed as "cruise fare" on booking confirmations provided to Program Members (so long as that disclosure is consistent with cruise line requirements). *See* Settlement § III, ¶ 32. These two practice changes—disclosure of NCFs as cruise fare and the ability to use points to pay for NCFs—strike at the heart of the relief sought by Plaintiffs in this matter and ensure the cessation of the challenged conduct. Class Members will no longer be required to pay NCFs in cash as part of their use of points in booking cruises.

As set forth in greater detail in the declaration of Dr. Elizabeth Yost, attached hereto as **Exhibit B** (hereinafter, "Yost Decl."), the class benefits in monetary and prospective relief are both calculable and significant. First, the total amount of NCFs charged to Class Members during the Class Period—from January 1, 2010 to February 23, 2018—was approximately $15.84 million. Yost Decl. ¶ 5. If the Settlement Class opts for 50 percent of the cash value of NCFs already paid during the Class Period, the value of this Settlement component would be approximately $7.92 million, half of the NCFs paid during the Class Period ($15.85 million). Yost Decl. ¶ 13. If the Settlement Class opts for the PlusPoints or Gift Card at 75 percent of the cash value of NCFs already paid, the value of this Settlement component would be approximately $11.88 million, three-fourths of the NCFs paid during the Class period ($15.84 million). Yost Decl. ¶ 14. The class benefit value of NCFs already paid during the Class Period, ranging from a minimum of $7.92 million to a maximum of $11.88 million, is, therefore, clearly ascertainable and significant.

Second, Dr. Yost, using a linear trend analysis, projects that—had the Settlement not ceased this conduct by agreement of the parties—NCFs collected from Class Members would have totaled $13,814,158.07 over just the next four years.  Yost Decl. ¶¶ 6–10.  The present value in avoiding those additional, future payments is $13,014,822.82.  Yost Decl. ¶ 10.  Accordingly, Dr. Yost valued the monetary and nonmonetary aspects of the Settlement between $20,936,361.70 (for the 50% cash option) and $24,897,131.14 (for the 75% PlusPoints/Gift Card option).  Yost Decl. ¶¶ 13–15.

The class benefit value to Class Members in the change in Defendants' business practices and in no longer having to pay NCFs in cash is, therefore, likewise clearly ascertainable and significant.  Notably, this Court has expressly considered and valued changes in corporate practices and non-monetary future relief in awarding attorneys' fees in similar circumstances.  *See Hinson I*, 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (Corrigan, J.) (granting class plaintiffs' motion for fees and expenses that included $23 million in estimated savings to class resulting from defendant's agreement to change its future billing practices); *Bastian v. United Servs Automobile Ass'n, et al*, No. 3:13-cv-1454-TCJ-MCR, at p. 32 (M.D. Fla. Nov. 11, 2017) (Corrigan, J.) (granting class plaintiffs' motion for fees and expenses (Doc. 137) in settlement including valuation of five years' prospective changes to defendant's corporate practices).

Thus, in summary, the value of the common fund or class benefit is, conservatively, $23.9 million.  The figure comprises the sum of the following values:  (1) $20.9 million, which is the minimum Settlement value attributed to the common fund by Dr. Yost for NCFs already paid during the Class Period for NCFs and for future NCFs that will not be charged to Class Members as result of Defendants' change in business practices and (2) $3 million in fees expressly agreed by the parties in the Settlement, which, upon Court approval, and are to be paid separately by

14

Defendants and without reduction to the common fund.  Plaintiffs' $4 million fee request comprises only 16.7 percent of the common fund, a percentage well below the presumably reasonable benchmark in this Circuit of 25 percent.

### C.  The *Camden I* Factors Clearly Support the Requested Fee.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id*. (quoting *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)). The *Camden I* factors are discussed below.

15

### 1.   Time and Labor Involved

As recounted above, and as set forth in the supporting declarations herewith of John A. Yanchunis (**Exhibit C**) (hereinafter, "Yanchunis Decl."), Joel R. Rhine (**Exhibit D**) (hereinafter, "Rhine Decl.") and Steven W. Teppler (**Exhibit E)** (hereinafter, "Teppler Decl."), Class Counsel expended significant effort to achieve the $23.9 million settlement for the Class. Class Counsel litigated this action for three and a half years.  They have engaged in extensive motion practice and discovery, including exchanging multiple productions of documents and data, exchanging written discovery and participating in multiple depositions.  *Id.*  Class Counsel reached a hard-fought settlement only after three separate full-day mediations and numerous informal settlement discussions. *Id.*

In performing the aforementioned work on behalf of the Class, Class Counsel spent over 4,954.25 hours of attorney and paralegal time without any assurance that the extraordinary commitment of time and effort to this case would result in the payment of any fee. Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and should not be punished for its persistence and efficiency in achieving a positive result.

### 2.   The Novelty and Difficulty of the Questions Involved Required the Skill of a Highly Talented Team of Attorneys.

This factor strongly favors an award of the fees requested. "Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). That this dispute presents complex issues as outlined above is evidenced not only by its protracted history, but also by the caliber of lawyers representing the parties. *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel

16

from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson.*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested . . . .  In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium."  *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011).   Here, Class Counsel enjoy a strong reputation in the area of complex and class action litigation.  Aronovitz Decl. at p. 17.  Class Counsel have successfully litigated and settled similar cases across the country, and, in this case, have been challenged by highly experienced and skilled counsel who deployed very substantial resources on Defendants' behalf.  Aronovitz Decl. ¶ 12; *see also* Yanchunis Decl. ¶ 13.

### 3.    The Claims Against Defendants Entailed Considerable Risk.

Prosecuting these claims was a significant undertaking. The risks incurred in pursuing the case have been discussed at length above and elsewhere.  *See, e.g.*, Plaintiffs' Motion for Final Approval, (Doc. 209).   "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F. Supp. 2d at 1336.

Here, Defendants maintained (and still maintain) that the challenged practices regarding the manner in which they charged consumers cash for a portion of the cruise fare were legal and not actionable and that Plaintiffs would not be able to maintain a class due to differences in the information provided by Defendants to Class Members when booking their individual cruises and their actual reliance on same. *See, e.g.*, Plaintiff Motion for Final Approval, (Doc. 209). Accordingly, this factor also militates in favor of awarding Class Counsel the requested fee amount.

> **4.      Class Counsel Assumed Substantial Risk in Pursuing this Action on a Pure Contingency Basis, and Were Precluded from Other Employment.**

Class Counsel prosecuted this case entirely on a contingent fee basis.  Aronovitz Decl. ¶ 18; Yanchunis Decl. ¶ 12.   As such, they assumed a significant risk of nonpayment or underpayment.  Numerous cases recognize the importance of this factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Ed. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).  As Judge King has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the

representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548. Class Counsel spent very substantial time litigating this case that they could not spend on other matters. Thus, consideration of this factor also justifies the requested fee.

> **5.    The Fee Requested Comports with Customary Fees Awarded in Similar Cases.**

An award of 16.7 percent is well below the benchmark and growing trend in this Circuit.[4] It is also consistent with fee awards in other delivery driver under-reimbursement class actions. *See, e.g., Perrin v. Papa John's International, Inc.*, No. 09-01335 (Doc. 454 at ¶ 5) (E.D. Mo. Jan. 12, 2016) (awarding class counsel 35% of the common fund). Accordingly, Class Counsel's requested fee award of $4,000,000 or about 16.7 of the common fund, is appropriate.

> **6.    The Remaining *Camden I* and Other Factors Favor Approval Of The Fee Requested.**

---

[4] *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest, Inc.*, No. 12-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557 at 8-10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory).

The remaining *Camden I* factors also support Class Counsels' fee request. The burdens of this litigation and the results obtained on behalf of Plaintiffs and the Class weigh in favor of the fee requested.  The fee request is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1368.

In addition, the fact that the parties negotiated arduously and at length during three formal mediation sessions and numerous subsequent settlement sessions to finalize the Settlement, and that no class member has objected to the Settlement or its provision on attorneys' fees, weighs in favor of the fee requested. *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request.") (collecting cases); *Gevaerts v. TD Bank*, No. 14-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015).

**D.  A Lodestar Analysis Confirms the Reasonableness of the Requested Fee.**

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362-63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (internal quotations marks, brackets and emphasis omitted). Still, it has been used as a "cross-check" to the percentage-of-the-fund analysis. *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (noting that "[s]ome courts use the

lodestar method as a cross-check of the percentage of the fund approach") (citing *In re Sunbeam*, 176 F. Supp. 2d at 1336).

To determine the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "After the lodestar is determined . . ., the court must next consider the necessity of an adjustment for results obtained." *Id*. at 1302. "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id*. (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)). "Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Id*. (citing *Blum v. Stenson*, 465 U.S. 886, 899 (1984)).  "This is because the reasonable hourly rate already should reflect the skill demonstrated by the advocate." *Id*.  "[E]nhancement may be appropriate if there is a risk of non-recovery of a fee in the case," such as in a contingent fee arrangement. *Id*.

The following chart summarizes the time and hourly rates entered by attorneys and the professional staff of the firm in this matter:

| Name | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| **MORGAN & MORGAN COMPLEX LITIGATION GROUP** | | | |
| John Yanchunis, Attorney admitted 1980 | $950 | 1112.98 | $1,057,141.00 |
| Patrick Barthle, Attorney admitted 2012 | $450 | 1120.10 | $504,045.00 |
| Marcio Valladares, Attorney admitted 1993 | $864 | 349.8 | $302,227.20 |

| | | | |
|---|---|---|---|
| David Reign, Investigator (retired FBI agent) | $300 | 8.5 | $2,550.00 |
| Ryan McGee, Attorney Admitted 2009 | $636 | 3.5 | $2,226.00 |
| Emily Lockwood, Paralegal (8 years of experience) | $196 | 3.6 | $705.60 |
| Lee Walters, Investigator (retired FBI agent) | $300 | 2.2 | $660.00 |
| Jennifer Cabezas, Paralegal (10 years of experience) | $196 | 1.1 | $215.60 |
| Lorraine Carreiro, Paralegal (18 years of experience) | $196 | .3 | $58.80 |
| **Total** | | **2601.88** | **$1,869,829.20** |
| **RHINE LAW FIRM** | | | |
| Joel R. Rhine, Attorney, Admitted 1988 | $750 | 869.15 | $651,862.50 |
| Dara L. Damery, Attorney, Admitted 2010 | $450 | 510.25 | $229,612.50 |
| Paige Inman, Attorney, Admitted 2012 | $350 | 11 | $3,850.00 |
| Stephanie L. Chase, Paralegal | $150 | 114.50 | $17,175.00 |
| Chris Goll, Paralegal | $150 | 151.25 | $22,687.50 |
| **Total** | | **1,645.15** | **$921,337.50** |
| **ABBOTT LAW GROUP** | | | |
| Steven W. Teppler, Attorney, Admitted 1981 | $800 | 314.90 | $251,920.00 |
| F. Catfish Abbott, Attorney, Admitted 1978 | $850 | 55.10 | $46,832.00 |
| Brittany R. Ford, Attorney, Admitted 2015 | $350 | 408.20 | $142,870.00 |
| Sandra O'Neil, Paralegal | $125 | 3 | $375.00 |
| **Total** | | **781.2** | **$442,000.00** |
| **COMBINED FIRM TOTALS** | | | |
| | | **5,028.23** | **$3,234,030.70** |

Here, in the three and half years that Class Counsel have been prosecuting their claims against Defendant in various forums, they have expended over 5,028 hours. Aronovitz Decl. ¶ 13; Yanchunis Decl. ¶ 19; Rhine Decl. ¶ 15; Teppler Decl. ¶ 22.  At their current hourly rates, the lodestar is $3,234,030.70. Aronovitz Decl. ¶ 13.  Of course, as this this Court knows, Class Counsel will continue to invest significant time in this matter through the settlement

22

administration process, to prepare for and attend the final hearing to obtain final approval, and to defend the Court's Final Judgment on any subsequent appeals. Yanchunis Decl. ¶ 2. The additional time will certainly bring the total loadstar closer (if not exceeding, in the event of an appeal) to the $4 million requested.

Had there been no common fund in the proposed Settlement and attorneys' fees were determined based solely on the lodestar method, Class Counsel would have sought a "substantial multiplier" to apply to their lodestar for reasons earlier discussed, in particular, the result achieved for the Class, the complexity of the dispute and issues Class Counsel had to skillfully address, and the contingent nature of Class Counsel's fee arrangement. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (*i.e.*, the likelihood of success viewed at the tune of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately 4 to 9 times lodestar). This would further dwarf the fees requested under the percentage-of-the-fund approach and the proposed Settlement. *See* Aronovitz Decl. ¶¶ 16—19.

**E.  Class Counsel's Expenses Are Reasonable.**

In addition to attorneys' fees, Class Counsel seek reimbursement of the expenses incurred in prosecuting this case against Defendants. Since the filing of the case, and as of May 7, 2018, they have incurred expenses in excess of approximately $289,676.08. The following chart breaks down the costs expended by Class Counsel per firm:

| COSTS AND EXPENSES | |
| --- | --- |
| **Firm** | **Amount** |
| Morgan And Morgan Complex Litigation Group | $252,112.73 |
| Rhine Law Firm, PC | $32,540.09 |

| Abbott Law Group | $5,023.26 |
|---|---|
| **Total** | **$289,676.08** |

Aronovitz Decl. ¶ 15; Yanchunis Decl. ¶ 22 & 23; Rhine Decl. ¶ 21; Teppler Decl. ¶ 23. The amount of costs actually expended and advanced by counsel include: filing and PACER fees, process service, expert expenses, *pro hac vice* fees, research/Westlaw charges, copying and mailing expenses, court reporting expenses for hearing transcripts and deposition coverage, and travel expenses in connection with court appearances, mediations and depositions in various parts of the country. The agreed upon and requested cost amount of $300,000 is less than $12,000 above the actual costs and expenses advanced by the firms as of May 2, 2018. As this Court can certainly be assured, however, this litigation is not over, and Class Counsel will continue to incur and advance costs through final judgment, and, if necessary, through any appeals. *See* Yanchunis Decl. ¶ 2. A supplemental declaration of additional costs and expenses will be submitted to the Court immediately prior to the fairness hearing in August. Accordingly, Class Counsel respectfully submit that they are entitled to recover these expenses.

**F. Plaintiffs Are Entitled to Reasonable Service Awards.**

The Settlement proposes that the named Plaintiffs each receive a Service Award of $10,000.00 for their participation in this action and service to the Settlement Class. "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, No. 08-22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g.*, *Cooper v. Nelnet, Inc.*, No. 14-314, (Doc. 81) (M.D. Fla. Aug. 4, 2014) (Dalton, J.) (approving a service award of $25,000); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694

(N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

Plaintiffs have worked diligently in service of the Class. Plaintiffs have produced documents and provided written responses to Defendant's Interrogatories. *See* Yanchunis Decl. ¶¶ 3—5. Plaintiffs kept abreast of the litigation strategy and of settlement discussions. *See id.* Both plaintiffs provided declarations. (Docs. 205-2 and 205-3). In addition, Mr. Finerman and Ms. Devino sat for depositions in this case; Mr. Finerman was deposed twice. Yanchunis Decl. ¶ 8. Plaintiffs have vigorously represented the Class and, absent settlement, would have continued to vigorously prosecute this case on behalf of the Class through trial. Moreover, the service payments were negotiated only after the parties agreed on the substantive terms of the Settlement, and no Class member has objected to the service awards being made in the amount requested. *See* Yanchunis Decl. ¶ 15.

Plaintiffs respectfully submit that service awards of $10,000 each are reasonable, particularly given the amount of time and effort put forth by Plaintiffs, and the lack of any objections. Indeed this Court has awarded $10,000 service awards in a number of similar cases. *See Hinson I*, 2012 WL 12952592, at *3 (Corrigan, J.) (approving $15,000 service awards); *Bastian,* No. 3:13-cv-1454-TCJ-MCR at p. 32 (Corrigan, J.) (approving $10,000 service awards).

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request for attorney's fees, costs, and expenses, and for service awards in the amounts requested.

25

Dated: May 7, 2018                             Respectfully submitted,


                                               /s/ John A. Yanchunis
                                               **JOHN A. YANCHUNIS**
                                               FBN: 0324681
                                               jyanchunis@forthepeople.com
                                               **MARCIO W. VALLADARES**
                                               FBN: 0986917
                                               mvalladares@forthepeople.com
                                               **PATRICK A. BARTHLE II**
                                               FBN:  0099286
                                               pbarthle@forthepeople.com
                                               **MORGAN & MORGAN**
                                               **COMPLEX LITIGATION GROUP**
                                               201 North Franklin Street, 7th Floor
                                               Tampa, Florida  33602
                                               (813) 223-5505 Telephone
                                               (813) 223-5402 Facsimile


                                               **JOEL R. RHINE***
                                               **RHINE LAW FIRM, P.C.**
                                               1612 Military Cutoff Road
                                               Suite 300
                                               Wilmington, NC  28403
                                               Tel: (910) 772-9960
                                               Fax: (910) 772-9062
                                               Email: jrr@rhinelawfirm.com


                                               **STEVEN W. TEPPLER**
                                               FBN: 014787
                                               steppler@abbottlawpa.com
                                               **BRITTANY R. FORD**
                                               FBN: 0117718
                                               bford@abbottlawpa.com
                                               **ABBOTT LAW GROUP, P.A.**
                                               2929 Plummer Cove Road
                                               Jacksonville, FL  32223
                                               T: 904.292.1111
                                               F: 904.292.1220


                                               *Pro Hac Vice

                                               *Counsel for Plaintiffs*


                                     26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via e-mail to all counsel of record on May 7, 2018.

/s/  John A. Yanchunis